IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:03-CR-0372-02** |
| | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| | : | |
| | : | |
| **ANTOINE OGARRO** | : | |

# **M E M O R A N D U M**

Before the court is Defendant Antoine Ogarro's motion to suppress evidence. (Doc. 41.) The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow, the court will deny Defendant's motion to suppress.

## I.     **Background**

### A.     **Procedural History**

By Indictment filed December 17, 2003, Defendant was charged with unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On February 28, 2006, Defendant appeared before the Honorable J. Andrew Smyser and entered a plea of not guilty to the Indictment. Defendant filed the instant motion to suppress on March 20, 2006 and a hearing was held on April 25, 2006.

### B.     **Factual History**

The following facts are based upon the testimonies of Officers John A. Savadia, Jr., Raymond R. Lyda, and Thomas Ryan of the Harrisburg Police

Department.[1]  On June 25, 2002 at approximately 2:15 a.m., Officer Savadia saw a van driving westbound in the 100 block of Market Street in downtown Harrisburg. (Hr'g Tr. 4-5).  The 100 block of Market Street is one-way eastbound. (*Id.* 4-5.) Officer Salvadia executed a traffic stop. (*Id.* 5-6, 20.)  Defendant got out of van and started walking towards Officer Salvadia's police car.  Officer Salvadia ordered Defendant back into the van and called for backup. (*Id.* 6.)  Officer Salvadia observed that there was a passenger in the van, and that the passenger was bending down in the front seat. (*Id.* 8.)  Officer Salvadia approached the driver who produced a New York driver's license identifying him as Antoine Ogarro. (*Id.* 7.) Officer Salvadia ran Defendant's license to check for warrants and learned there was an active warrant for Defendant's arrest. (*Id.* 7.)  Defendant was placed under arrest and removed from the van. (*Id.* 8-9.)

   Soon thereafter, Officers Lyda and Ryan arrived. (*Id.* 7.)  While Officer Salvadia was placing Defendant under arrest, Officer Lyda was watching the passenger of the van. (*Id.* 28.)  The passenger door of the van was open and Officer Lyda observed the passenger attempting to hide a magazine from a gun under his foot. (*Id.* 28.)  Officer Lyda yelled to his fellow officers to let them know about the magazine. (*Id.* 28.)  The passenger, identified as Jackson, was removed from the van and secured in handcuffs. (*Id*. 29.)  Officer Lyda observed that the magazine was loaded and believed that the companion gun for that magazine would be close by. ( *Id*. 29.)   When Officer Ryan heard there was a magazine present, he also believed that a gun would be close. (*Id*. 37, 42.)  Officers Lyda and Ryan began looking around the passenger compartment of the van for the gun. (*Id*. 29.)

---

[1]Defendant did not testify at the April 25, 2006 hearing.

2

Officer Salvadia looked in the front driver's seat area and saw, in plain view, a small baggie of marijuana near the seat runner. (*Id*. 11-12.) Officer Ryan saw a blue backpack behind the driver's seat. (*Id*. 39.) The backpack was partially open, and it in Ryan saw the grip end of a gun. (*Id*. 40.) That gun was a loaded Ruger revolver. (*Id*. 39.) Also found by Officer Lyda in the van was the .40 caliber pistol for the loaded magazine. (*Id*. 16.) Both Defendant and Jackson were placed under arrest and charged with drug and weapons offenses.

The van was not registered to either Defendant or Jackson. (*Id*. 14.) Officer Salvadia contacted dispatch which was able to contact the owner. (*Id*. 15.) The owner requested that the vehicle be towed. (*Id*.)

**II.**     **Discussion**

    **A.**     **The Initial Stop**

At the outset, it is noted that Defendant argued in his motion to suppress that both the initial stop and the subsequent search of the vehicle were unlawful. After the testimony at the hearing, however, counsel for Defendant conceded that the stop was "reasonable." (*Id*. 48.) Moreover, the court notes that "a stop to check a driver's license and registration is constitutional when it is based on an 'articulable and reasonable suspicion that . . . either the vehicle or an occupant' has violated the law." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). In the instant case, Officer Salvadia observed the vehicle operated by Defendant driving the wrong way on a one way street; thus, Officer Salvadia had a reasonable suspicion that the vehicle or the driver had violated the law. Accordingly, the initial stop of Defendant was legal.

### B. The Search

The remaining issue is whether the subsequent search of the passenger compartment of the van and container in it (the backpack) was justified. Defendant asserts that the while the search occurred after a lawful arrest, the search was too attenuated from the arrest to be consider incident to the arrest. Specifically, Defendant asserts that he was removed from the van and secured by officers; thus, according to Defendant, the search was not contemporaneous to his arrest. The Government responds that the search was incident to a lawful arrest; therefore, the search was lawful. In the alternative, the Government asserts that the search was a valid for inventory purposes of a vehicle that was being turned over by police to a private tow company; thus, the inevitable discovery rule applies.[2] The court is not convinced by Defendant's arguments, and will deny Defendant's motion to suppress.

In an effort to "set forth a clear rule for police officers and citizens alike . . .[the Supreme Court] held that 'when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.' " *United States v. Thornton,* 541 U.S. 615, 620 (2004), quoting *New York v. Belton,* 453 U.S. 454, 460 (1981) (footnotes omitted). "It follows from this conclusion that the police may also

---

[2] Because the court is convinced that the search was incident to a lawful arrest, the court need not address the Government's assertion that the inevitable discovery rule applies. However, the court notes that it would deny Defendant's motion based upon the Government's alternative argument. In brief, after taking lawful custody of property, police may conduct a warrantless search of that property to protect owner's property while in police custody, to protect police against claims of lost or stolen property, and/or to protect police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

examine the contents of any containers found within the passenger compartment . . . . Such a container may, of course, be searched whether it is open or closed . . . ." *Belton,* 453 U.S. at 460-61.

> The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment justifies the sort of generalization which *Belton* enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.

*Thornton,* 541 U.S. at 623 (footnote omitted).

According to the Government, such a search can occur even after the arrestee is removed from the vehicle and secured by the arresting officers. In support of its position, the Government cites to the facts of *Thornton*, 541 U.S. 615 and *Belton,* 453 U.S. 454. In *Thorton*, the Supreme Court found that the search of the vehicle was lawful even though the arresting officer searched the vehicle after he had "handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car." *Thornton*, 541 U.S. at 618. Likewise in *Belton*, the Supreme Court upheld a vehicle search that occurred after the arresting officer directed occupants out of car, placed them under arrest, patted them down and placed them in separate areas of thruway, found an envelope containing marijuana, and searched each one of them. *Belton,* 453 U.S. at 456.

The instant case is analogous to both *Thorton* and *Belton*. Therefore, while the possibility that either Defendant or Jackson, handcuffed and secured by the arresting officers, would have been able to access a weapon or destroy evidence to be remote if not entirely impossible, the search of the vehicle is justified under

5

Supreme Court precedent.  Accordingly, the court will deny Defendant's motion to suppress.  An appropriate order will issue.

                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated:  June 14, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : **CRIMINAL NO. 1:03-CR-0372-02**
:
: **JUDGE SYLVIA H. RAMBO**
**v.** :
:
**ANTOINE OGARRO** :

## **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion to suppress (Doc. 41) is **DENIED.**

                                                   s/Sylvia H. Rambo
                                                   SYLVIA H. RAMBO
                                                   United States District Judge

Dated: June 14, 2006.