# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE O'GARRO, | : | 1:03-CR-372-02 |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | Judge Rambo |
| Respondent | : | |

## **M E M O R A N D U M**

On November 16, 2009, Petitioner Antoine O'Garro, an inmate currently incarcerated at the Federal Correctional Institution in Otisville, New York, filed the instant petition for a writ of habeas corpus pursuant to 29 U.S.C. § 2255 alleging ineffective assistance of counsel. Petitioner claims that counsel was ineffective for failing to raise the issue of a possible violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. App. 2, § 2, Art. 3 by the United States Attorney's Office for the Middle District of Pennsylvania.

## I.      **Background**

Antoine O'Garro was indicted by a grand jury on December 17, 2003, for unlawful possession of a firearm. The facts supporting the indictment were that O'Garro had been pulled over in Harrisburg, Pennsylvania, during the course of a routine traffic stop, during which it was discovered that he had an outstanding warrant in New York. O'Garro was arrested and a search of his car was conducted, this search uncovered a handgun in the vehicle. O'Garro was sent back to New York pursuant to the outstanding warrant where he was subsequently sentenced to three

years imprisonment. During this time, a detainer was lodged against him for the federal weapon charges pending in the Middle District of Pennsylvania.

On September 20, 2005, the United States Attorney's Office for the Middle District of Pennsylvania ("U.S. Attorney"), received a letter from O'Garro, which was dated June 29, 2005, requesting that he be produced for the federal detainer. (Doc. 120, at 16-17 of 37.) On November 22, 2005, the U.S. Attorney received a letter from the Five Points Correctional Facility in New York, officially requesting that O'Garro be produced on the detainer and containing all of the information required by the IAD.

After receiving this information, on December 12, 2005, the U.S. Attorney requested a writ to produce O'Garro in federal court. A writ was issued on January 9, 2006, instructing that O'Garro should appear in court on February 28, 2006.

On February 28, 2006, O'Garro made his initial appearance in federal court. At this time, he pled not guilty and the court ordered that all pretrial memoranda be filed by March 20, 2006. On March 20, 2006, O'Garro filed a motion to suppress which, after a hearing and full briefing, was denied on June 14, 2006.

On July 7, 2006, a plea agreement was filed. O'Garro entered into this agreement on July 18, 2006. O'Garro was sentenced on December 5, 2006, to eighty-six months which reflected time-served on a related state charge, and a two month credit for the period of time between the September 20, 2005 letter from O'Garro, and the November 22, 2005 official request from his place of detainment that he be produced on the detainer.

O'Garro's trial counsel represented him through his direct appeals, which were ultimately unsuccessful. On November 16, 2009, O'Garro filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255, for ineffective assistance of counsel. The government filed a brief in opposition on January 14, 2010, to which O'Garro replied on February 2, 2010. O'Garro was appointed counsel and a hearing was held on May 28, 2010. The motion is now ripe for disposition.

**II.** **Legal Standard**

Habeas Corpus relief under § 2255 is available to "prisoner[s] in custody under sentence of a court established by Act of Congress" when (1) the sentence was imposed in violation of the Constitution or the laws of the United States, (2) the court did not have jurisdiction to impose the sentence, (3) the sentence was greater than the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. If the reviewing court determines that any of these errors tainted the sentence imposed, the court must vacate and set aside the judgment. *Id*. Additionally, the court has discretion to discharge or resentence the prisoner as well as to grant a new trial or correct the sentence. *Id*.

The relief afforded by § 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). The remedy is intended only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also United States v. Cleary*, 46 F.3d 307, 310-11 (3d Cir. 1995).

### A. *Strickland*

Under the Sixth Amendment, criminal defendants are guaranteed the right to effective assistance of counsel in all proceedings. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). Legal claims governing the ineffective assistance of counsel are governed by the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984). " 'An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' " *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 687). To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. As with all applications of the *Strickland* test, "the question whether a given Defendant has made the requisite showing will turn on the facts of a particular case." *Roe v. Flores-Ortega,* 528 U.S. 470, 485 (2000).

### III. Discussion

Petitioner argues that because his trial counsel did not attempt to have his indictment dismissed under the IAD, nor was this issue raised on direct appeal, counsel was ineffective and, thus, his sentence should be vacated. The government argues that Petitioner's trial counsel not ineffective, and Petitioner would not have succeeded under his IAD claim regardless, and thus, he was not prejudiced. The

4

court agrees with the government on both of these arguments, however, the prejudice prong of the *Strickland* test will be addressed first.

### A. **Probable Success on the Merits under the IAD**

The IAD was passed to help streamline the process of resolving outstanding criminal charges against individuals serving a sentence in another state. *United States v. Dent*, 149 F.3d 180, 186 (3d Cir. 1998). Article III of the IAD requires a final disposition of a defendant's case not later than 180 days after a request for trial is received by the charging authorities. 18 U.S.C. app. § 2, art. III(a). In addition, Article IV requires that an indictment be dismissed with prejudice if the defendant is not brought to trial within the requisite 180 days. *Id.* at art. V(c).

Requests for final disposition require strict compliance with the provision of the IAD for the 180-day time limit to commence. *Dent*, 149 F.3d at 186. Therefore, the 180-day time limit is not invoked until an inmate "shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." 18 U.S.C. § 2, art. III(a). Furthermore, "the request 'shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of the parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.' " *Id.*; *Dent*, 149 F.3d at 186. However, strict compliance with Article III will not be required if it can be shown that is was the custodial state, rather than the inmate, who failed to produce the proper documentation to the state holding the detainer. *Dent*,

149 F.3d 186-87. But to receive this exception, the Third Circuit has made clear that a prisoner must "show that she/he substantially complied to the fullest extent possible." *Casper v. Ryan*, 822 F.2d 1283, 1293 (3d Cir. 1987). Thus, "the inmate's IAD request must contain sufficient information to alert the government that Article III has been invoked, without requiring the prosecution to analyze each communication with a fine-tooth comb to determine whether it should be construed as invoking the IAD." *Dent*, 149 F.3d at 186 (further explaining the holding of *Casper*, 822 F.2d 1283 (3d Cir. 1987).)

In the instant case, November 22, 2005, is when the U.S. Attorney's office received all required documentation under the IAD, and, is the date from which the government had 180-days to bring O'Garro to trial.[1] Although not explicit, not included in the 180-day time period is the period between when O'Garro filed a suppression motion and when a reasonable disposition of this motion occurred. *See e.g.*, 18 U.S.C. § 1361(h)(1)(D), Speedy Trial, Time Limits and Exclusions (stating "The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or the prompt disposition of, such motion."); *see also*

---

[1] O'Garro argues that the 180-day time limit should begin to run from the time he claims to have first sent his request in June of 2005. However, aside from the fact that the letter bears a June date, there is no evidence that it was received by the U.S. Attorney's office before September 20, 2005. Furthermore, under *Dent*, because the September letter did not specifically request relief under Article III, it is apparently insufficient to invoke the IAD. *See Dent*, 149 F.3d at 186 (explaining that although Dent requested a speedy resolution of his charges under the IAD, he did not specifically reference Article III, nor was this request accompanied by the information required under Article III(b), and as such, was an insufficient request to trigger the 180-day time limit.)

*United States v. Wilson*, 737 F. Supp. 599, 600 (D. Nev. 1990) (quoting *United States v. Black*, 609 F.2d 1330 (9th Cir. 1979) "protections afforded under the IAD are not based on constitutional rights or the preservation of a fair trial but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction.") Between November 22, 2005, and July 18, 2006, when O'Garro pled guilty, 239 days had past. However, eighty-seven days must be subtracted for the period between O'Garro's filing of a suppression motion, briefing and a hearing, and the actual disposition of that motion. Thus, 152 days passed, which may be attributed to the government in this case. Far less than the 180 required by the IAD.

Because O'Garro has failed to show that he would have been successful on the merits had his attorney requested the indictment be dismissed under the IAD, he is unable to establish prejudice.

### B. <u>Trial Counsel's Performance</u>

Although the court has already determined that O'Garro was not prejudiced by counsel's failure to raise the issue of the IAD, it appears, that trial counsel worked fairly and diligently in deciding whether or not this was a viable claim to raise before the courts.

John F. Yaninek, Esquire, represented O'Garro from the beginning of his criminal prosecution in 2006, all the way through to an appeal to the United States Supreme Court. (Tr. Hrg. Pet. for Relief 28 U.S.C. § 2255, May 18, 2010, at 30.) After the court denied the suppression motion, O'Garro brought the IAD to Mr. Yaninek's attention. Yaninek admitted this was the first time he had seen it as a potential issue, and decided to take some time to do research and understand the

7

statute. (*Id.* at 31.) After researching it, Yaninek determined that it was certainly not clear that O'Garro would prevail on having his indictment dismissed with prejudice, but that it was definitely something that could be raised at sentencing. (*Id.*) Mr. Yaninek had numerous discussions with O'Garro about the probability of success of dismissal under an IAD motion. In addition, Mr. Yaninek sent O'Garro a letter stating that after extensive research on the issue, he did not believe that Third Circuit law was in O'Garro's favor. (*Id.* at 33-34.)

After all of the research and discussions, it was Mr. Yaninek's belief that he and O'Garro had agreed to pursue the IAD matter as a sentencing issue, rather than as an avenue for complete dismissal of the case. (*Id.* at 34.) It was agreed that Mr. O'Garro would plead guilty, and that certain pretrial issues would be waived — including complete dismissal of the case based on the IAD.[2] (*Id.*)

Mr. Yaninek continued to represent O'Garro after sentencing. However, he did not pursue the IAD issue because he believed O'Garro had already been provided relief by this court when it issued a two-month credit, and because he believed there were more viable issues to pursue on appeal. (*Id.* at 39-40.)

As such, it does not appear that Mr. Yaninek's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). When the IAD issue was presented to Mr. Yaninek, he thoroughly researched and discussed with O'Garro the likelihood of success on this claim. He read the cases on which the Third Circuit had addressed the issue and determined that, if viable it all, it would be at the sentencing stage of the proceedings and not as

---

[2] There were additional reasons Mr. Yaninek encouraged a guilty plea, one of which was there was additional criminal conduct by O'Garro which Yaninek was concerned that Pennsylvania, as a separate sovereign, would recharge. (*Id.* at 34-35.)

8

a means of dismissing the indictment in its entirety. Based on the information before the court, it cannot be held that Mr. Yaninek's performance as trial counsel fell below an objective standard of reasonableness.

**IV.      Conclusion**

For the reasons mentioned above, Petitioner has failed to establish he is entitled to habeas corpus relief under 28 U.S.C. § 2255 for ineffective assistance of counsel. Petitioner has failed to show he was prejudiced in any way, as petitioner is not entitled to dismissal of his indictment under the IAD. In addition, any delay between the time in which Petitioner sent his request to the U.S. Attorney, and the time the U.S. Attorney received the official request from Petitioner's place of detention has already been credited to Petitioner's sentence. Finally, nothing in the record indicates that the actions taken by Petitioner's trial counsel fell below an objective standard of reasonableness. As such, the petition will be denied. An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated: October 7, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE O'GARRO, | : | 1:03-CR-372-02 |
| Petitioner | : | |
| v. | : | |
| UNITED STATES OF AMERICA, | : | Judge Rambo |
| Respondent | : | |

## O R D E R

For the reasons mentioned in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Petitioner's motion to vacate under 28 U.S.C. § 2255, (Doc. 120), is **DENIED**. This court declines to issue a certificate of appealability.

s/Sylvia H. Rambo<br>
United States District Judge

Dated: October 7, 2010.